JS-6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>UNION CM INC. and CENTRAL METAL, INC.,<br><br>Defendants. | Case No.: 2:24-cv-11065 PVC<br><br>**CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Union CM Inc. ("Union CM") owns and operates a facility at 2203 S. Alameda Street, Los Angeles, California 90058, under Waste Discharger Identification number 4 19I014775 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of receiving scrap ferrous and non-ferrous metals for recycling. The Facility is categorized under Standard Industrial Classification ("SIC") Code 5093, covering Scrap and Waste Materials;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility ("General Permit" or "Permit")[1], and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

---

[1] Any references to the "General Permit" or "Permit" herein shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. Any reference in this Consent Decree to specific sections or subsections of the General Permit that are moved, modified, or otherwise changed in a subsequent version of the General Permit shall be to such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c may be renumbered as §XI.B.7.c, combined into the current §XI.B.6.d, or split into a new §XI.B.6.c and §XI.B.6.d.

1

CONSENT DECREE

**WHEREAS**, Plaintiff alleges that Union CM's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Union CM, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan and a storm water monitoring implementation plan, (2) control pollutant discharges using, as applicable, best available technology economically achievable or best conventional pollutant control technology to prevent or reduce pollutants through the development and application of Best Management Practices, which must be detailed in and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards, and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on October 14, 2024, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Union CM, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Los Angeles Regional Water Quality Control Board ("Regional Board"), the Regional Administrator of EPA Region IX, and the U.S. Attorney General of the U.S. Department of Justice, alleging violations of the Clean Water Act and the General Permit;

**WHEREAS**, on December 23, 2024, LA Waterkeeper filed a complaint against Union CM in the Central District of California ("Court"), Civil Case No. 2:24-cv-11065-WLH-PVC ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Union CM's discharges of pollutants into storm drains and surface waters, including Compton Creek, Los Angeles River Reaches 1 and 2, the

Los Angeles River Estuary (Queensway Bay), San Pedro Bay Near and Off Shore Zones, and the Pacific Ocean (collectively, "Receiving Waters");

**WHEREAS**, since receiving the 60-Day Notice Letter, Defendant has committed to installing the advanced treatment system set forth herein to improve stormwater management at the Facility and implement this Consent Decree;

**WHEREAS**, Plaintiff and Union CM (collectively, "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Union CM pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.      The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.      Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.      The Complaint states a claim upon which relief may be granted against Union CM pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.      LA Waterkeeper has standing to bring this action.

5.      The Court shall retain jurisdiction over this matter for the purposes of interpreting, modifying, or enforcing the terms and conditions of this Consent Decree and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree, for the Term (as defined below) of this Consent Decree including for as long as necessary for the Court to resolve any motion to

enforce this Consent Decree, but only regarding issues raised within the Term. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

**OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Union CM agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

**AGENCY REVIEW AND DEFINITIONS**

    **A. AGENCY REVIEW OF CONSENT DECREE**

8. <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the United States EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice.</u> Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree.</u> Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B. DEFINITIONS**

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, whether or not capitalized, the following definitions apply:

a. "85th Percentile Storm Event" means a 24-hour storm that produces 0.89 inches of precipitation.

b. "BAT" means the Best Available Technology Economically Achievable.

c. "BCT" means the Best Conventional Pollutant Control Technology, and collectively with BAT is referred to herein as "BAT/BCT."

d. "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

e. "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

f. "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

g.    "Design Storm" means the volume and flow rate of runoff produced from advanced treatment has to be the volume and flow rate of runoff produced from "a design storm" as defined by General Permit Section X.H.6.

h.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

i.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k.    "Forecasted Rain Event" means a forecasted rain event as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Vernon, CA, USA (Los Angeles County)".

l.    "MIP" means a Monitoring Implementation Plan.

m.    "PPT" means Pollution Prevention Team.

n.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A.1 of the General Permit.

o.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B.1 of the General Permit.

p.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

q.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

r.    "Storm Resistant Shelter" means a completely roofed and walled building or structure, or a top-covered structure with permanent

supports but with no side coverings, provided that the materials under the structure are not subject to wind dispersion or track-out, and no stormwater discharge contacts such materials as defined by General Permit Section XVII.B.5.

s.  "SWPPP" means a Storm Water Pollution Prevention Plan.

t.  "Term" means the period between the Effective Date and the "Termination Date."

u.  "Termination Date" means the latest of:

    i.  June 30 following three (3) years from the Effective Date;

    ii.  June 30 following two (2) years after the advanced treatment system is fully installed, operational, and optimized;

    iii.  seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree; or

    iv.  seven (7) days from Union CM's completion of all payments and other affirmative duties required by this Consent Decree.

v.  "Early Termination."  Notwithstanding the foregoing, if Defendant provides Plaintiff notice of its intent to seek a Notice of Termination ("NOT") or Non-Exposure Certification ("NEC") at least twenty-one (21) days prior to submitting necessary documentation to the Regional Board to obtain the NOT or NEC, and all accrued monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, this Consent Decree will terminate ten (10) calendar days after Defendant provides written notification to LA Waterkeeper of the Los Angeles Regional Water Quality Control Board ("Regional

7

Board") approval and of its right to terminate pursuant to this Paragraph ("Early Termination").

1. Notwithstanding the foregoing, if the sampling results for samples taken at the Facility as required by this Consent Decree during four (4) consecutive QSEs demonstrate no "Exceedances" (as defined in Paragraph 25 below) of any parameter at any Discharge Point, and provided that all accrued monetary obligations in this Consent Decree have been met and that there are no ongoing, unresolved proceedings or processes to enforce the Consent Decree, then the Termination Date of this Consent Decree shall be thirty (30) days from the date Defendant provides written notification to LA Waterkeeper of its right to terminate pursuant to this Paragraph.

w.    "Wet Season" means the period beginning October 1st of any given calendar year and ending June 30th of the following calendar year.

**COMMITMENTS OF THE SETTLING PARTIES**

**C. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES**

12.    Non-Storm Water Discharge Prohibition. Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.    Current and Additional Best Management Practices. At all times, Union CM shall implement BMPs identified in its SWPPP and BMPs described herein, and shall develop and implement additional BMPs as necessary to comply with the provisions of this Consent Decree, the General Permit, and the Clean Water Act.

14.    Rain Gauge/Sensor. Union CM shall install and maintain an electronic rain gauge or sensor at the Facility by October 1, 2025. The rain gauge/sensor shall

be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Union CM shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Non-Structural BMPs for the Facility</u>. As soon as possible but no later than October 1, 2025, Union CM shall develop and implement the following BMPs at the Facility:

    a. Implement a sweeping program using a regenerative air or vacuum sweeper certified by the South Coast Air Quality Management District with the capacity to collect and retain PM-10 (10 μm) particles on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within forty-eight (48) hours prior to a Forecasted Rain Event with a fifty percent (50%) probability of a rain event greater than 0.1 inches, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access.  If after one (1) year after  the Effective Date, Union CM presents evidence to Plaintiffs that the Facility does not discharge when the local rain forecast predicts point one (0.1) inches within the next forty eight (48) hours, or that none of the Table 1 numeric limits have been exceeded, then the Parties will meet and confer on whether the Pre-Rain sweeping should be triggered at a higher threshold.;

    b. Identify maintenance areas, waste storage areas, hazardous materials storage areas, electronic materials storage areas, bailing and other processing areas on the Facility Site Map in Exhibit B.

    c. Label and store all hazardous materials and waste in Storm Resistant Shelters, in conformity with applicable hazardous material and waste

storage requirements per Los Angeles County Fire Department (LACoFD) Health Hazardous Materials Division (HHMD) and the Department of Toxics Substance Control (DTSC) regulations;

d.  Inspect hazardous material and waste storage areas daily for proper implementation and maintenance of control measures and containment integrity;

e.  Ensure all drains are free of clogs and operating as intended before each Forecasted Rain Event;

f.  Keep solid waste bins and trash waste receptacles covered at all times when not in use;

g.  Institute an equipment and maintenance program as follows, subject to modification in an amended SWPPP:

  i.  maintenance activities occur only in designated work areas or beneath covered maintenance areas;

  ii.  spill clean-up supplies are kept at all fluid storage and maintenance areas;

  iii.  no maintenance activities occur outdoors during wet weather, unless such maintenance is required for safe operation of the Facility;

  iv.  absorbent is laid down prior to conducting any emergency maintenance activities outdoors;

  v.  when spills or leaks occur outside or have the potential to migrate outside, action shall immediately be taken to contain, capture, and clean up fluids with dry techniques such as absorbents;

  vi.  drip pans or open waste containers are not left unattended and waste is transferred to proper containers as soon as practical, but at a minimum at the end of the workday;

10

CONSENT DECREE

h. Remove and prevent the storage of all unused or abandoned racks, vehicles, equipment, and non-essential materials;

i. Deploy high intensity magnets (MagStyx) to help reduce metallic iron exposure to storm water.

j. Prior to the start of the Wet Season, no later than September 15th and annually until such time as the Advanced Treatment System described in Paragraph 16 is operational, employ and secure and replace as necessary wattles/filters/filtration socks (biochar or other equivalent media) at each discharge location as shown on the site map identified in Exhibit B to reduce pollutants identified in Table 1 in storm water discharged from the Facility.

k. During each Wet Season until such time as the Advanced Treatment System described in Paragraph 16 is operational, as necessary, replace the wattles/filters/socks when degraded or ineffective, including without limitation when there are rips, tears or other visual damage, and/or sampling data demonstrating the wattles/filters/socks are not sufficiently reducing pollutant concentrations;

l. Pre-Rain Protocol.  Within forty-eight (48) hours prior to a Forecasted Rain Event with a fifty percent (50%) probability of a rain event greater than 0.01 inches, inspect all wattles/filters/socks deployed at the Facility. Remove any exposed waste material and cover all industrial materials, debris and scrap bins, and trash cans with tarps, lids, or other coverings sufficient to prevent exposure to rainfall, or otherwise move them to a storm resistant shelter. Once the Advanced Treatment System described in Paragraph 16 is operational, continue to implement the pre-rain protocol to the extent feasible and applicable;

m. On a quarterly basis as specified in Paragraph 26, Union CM shall confirm to LA Waterkeeper in writing, with photographs where

appropriate, that such BMPs have been implemented as set forth above.

16. <u>Structural and Advanced BMPs for the Facility</u>.

   a. By October 1, 2026, upgrade or install permanent berms, curbs, or similarly effective physical barriers sufficient to prevent storm water discharges from the 85th Percentile Storm Event from any point other than the Discharge Point(s);

   b. By October 1, 2026 shall review and modify as necessary the existing advanced treatment system to meet the following criteria:

      i. The system shall be capable of capturing and treating the 85th percentile storm event for all storm water and non-storm water that comes in contact with or comingles with storm water associated with industrial activities at the facility;

      ii. The system shall be designed to meet the pollutant concentration limits set forth in Table 1 below.

      iii. Within thirty (30) days of receiving the sample results after the first QSE after installation of the advanced treatment system described in subparagraph a. above, Union CM will evaluate the performance of the system. Within sixty (60) days thereafter, Union CM will make any adjustments necessary to ensure that the storm water discharged from the system does not exceed the values set forth in Table 1 below.

   c. To ensure that the Advanced Treatment System is timely and properly implemented, the following process and timeline shall be met. Such time frame may be extended as needed based upon appropriate justification and agreement of the Parties, including due to permitting, contractor or supply delays.

      i. By thirty (30) days after the Effective Date, Union CM shall engage a California Licensed Professional Engineer to design an

12

CONSENT DECREE

advanced treatment system or modify as necessary the existing advanced treatment system;

Include in each quarterly report described in Paragraph 26 below a summary of progress regarding the installation of the Advanced Treatment System, including a description of the design, flow, and treatment process.

### D. SAMPLING AT THE FACILITY

16.     During the Term, Union CM shall collect samples of storm water discharge from at least four (4) Qualifying Storm Events, including the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first two (2) Qualifying Storm Events during the second half of the Reporting Year. If, due to lack of Qualifying Storm Events, fewer than two Qualifying Storm Events are collected in the first half of a Reporting Year, that shall be compensated for by collecting an additional sample from an additional Qualifying Storm Event (to the extent such additional Qualifying Storm Events occur) during the second half of a Reporting Year, until a total of four samples are collected for any Reporting Year occurring during the term of this Agreement.

17.     Union CM will inspect the perimeter of the facility during the first four QSE of any reporting year to confirm that each of the discharge points have been accurately identified on the Site Map and will revise the Site Map as necessary. Union CM shall also monitor to see if there are any other locations where fugitive stormwater leaves the premises, and will close  any fugitive stormwater discharge points within thirty (30) days of their identification.

18.     Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5.[2]

19.     If Union CM does not collect samples during a Forecasted Rain Event because such rain event did not produce a discharge, then Union CM shall document

---

[2] Stormwater that is contained on site as part of the operations of the Advanced Treatment System as described in Paragraph 16 or other flow control BMPs will be sampled within four hours of the commencement of discharge.

13

CONSENT DECREE

the inability to sample by taking photographs during the rain event of each Discharge Point. Union CM shall maintain those photographs along with the rain/ gauge sensor data and produce them subject to the quarterly reporting requirements outlined in Paragraph 26 below.

20.     Sampling Parameters. All samples collected pursuant to the Permit shall be analyzed, at minimum, for the parameters listed in Table 1. Should Union CM intend to conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations, a revised pollutant source assessment, or a new mandate from a regulatory agency, such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (as defined below). Union CM shall immediately notify LA Waterkeeper of its intent to conduct sampling for any such additional parameters and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of such notification.

21.     Laboratory and Holding Time. Except for pH samples, Union CM shall deliver all samples to a California-certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that is calibrated and used according to the manufacturer's instructions.

22.     Detection Limit. Union CM shall request that the laboratory use analytical methods adequate to detect the individual pollutants at or below the values specified in the General Permit and Table 1 below.

23.     Reporting. Union CM shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and notify LA Waterkeeper within ten (10) days of receipt of the lab reports.

14

CONSENT DECREE

### E. REDUCTION OF POLLUTANTS IN DISCHARGES

24.    Table 1 Numeric Limits. Union CM shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to levels below those in Table 1.

**TABLE 1[3]**

| Parameter | Numeric Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L (instantaneous); 100 mg/L (annual) | NAL |
| Oil & Grease (O&G) | 25 mg/L (instantaneous); 15 mg/L (annual) | NAL |
| pH | 6-9 SU (instantaneous) | NAL |
| Iron | 1.0 mg/L (annual) | NAL |
| Lead | 0.094 mg/L (instantaneous) | NEL |
| Aluminum | 0.75 mg/L (annual) | NAL |
| Zinc | 0.159 (instantaneous) | NEL |
| Chemical Oxygen Demand | 120 mg/L (annual) | NAL |
| Cadmium[4] | 0.0031 mg/L (instantaneous) | NEL |
| Copper | 0.06749 mg/L (instantaneous) | NEL |

25.    Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the concentration of any pollutant in any storm water sample exceeds any numeric limit contained in Table 1 in any reporting year provided that the exceedance is not currently being addressed in a previous Action Plan pursuant to Paragraph 27 below.

---

[3] The numeric limits listed in Table 1 are for reference only, and the Table 1 limit applicable to each parameter shall be the then-effective limit provided by the applicable source, e.g., if the NAL for TSS is either increased to 110 mg/L or decreased to 90 mg/L, such new NAL, and not 100 mg/L, shall be used as the Table 1 limit for the purposes of this Consent Decree as if set forth herein. If the source of a limit in Table 1 is revised to no longer provide a limit for a given parameter, e.g., the NAL for TSS being removed, then the Parties shall meet and confer regarding the applicable Table 1 limit for such parameter for the purposes of this Consent Decree.
[4] If Union CM reports four consecutive samples in which the cadmium concentration is below the NEL, Union CM will no longer be required to sample for cadmium.

15

CONSENT DECREE

26.    **Quarterly Reports.** On or before January 31, 2026, April 30, 2026, and July 31, 2026, and October 31, 2026, and quarterly every year thereafter, Union CM shall submit a written quarterly report to LA Waterkeeper. Each report shall include:

a. A description of all BMPs implemented under this Consent Decree, with representative photographs showing that each BMP has been installed.

b. If a Forecasted Rain Event results in significant rainfall during regular operating hours, but Union CM is unable to sample because insufficient discharge occurs, Union CM shall document the inability to sample in the following quarterly report pursuant to Paragraph 19 above.

c. If Union CM intends to sample for any additional pollutants listed in 40 C.F.R. § 131.38 or the General Permit, including due to operational changes, updated assessments, or agency mandates, Union CM shall notify LA Waterkeeper. The Parties shall meet and confer within thirty (30) days to determine the applicable Table 1 limit.

27.    Action Plan. After an advanced treatment is fully installed, operational, and optimized as more fully described in Paragraph 16 above and Union CM receives a laboratory report that demonstrates an Exceedance as defined above; or the advanced treatment system discharges untreated storm water in smaller than a Design Storm; or Union CM observes an unauthorized discharge of Non-Stormwater (each, a "Trigger Event") Union CM shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the applicable Trigger Event. A single action plan may be submitted for all identified exceedances at all discharge points for any QSE for which an Action Plan is required.

28.    Action Plan Proposed BMPs. The following BMPs should be generally considered by the QISP for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

16

CONSENT DECREE

i.  Hydrologic Controls. Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii.  Sweeping. The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii.  Treatment Systems. Installing additional components or systems, or otherwise improving, the advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.  Cover. Develop a formal pre-rain protocol, whereby industrial materials, debris and scrap and trash bins are covered with tarps, lids, or other coverings sufficient to prevent exposure to rainfall;

v.  Resurfacing. Patch, pave, or otherwise resurface areas of degraded pavement or asphalt throughout the Facility.

vi.  Evaluation of Existing BMPs.  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

vii.  Action Plan Review. LA Waterkeeper shall have thirty (30) calendar days upon receipt of the Union CM's Action Plan to provide the Union CM with comments. Failure to provide written comments within thirty (30) calendar days shall constitute strong evidence that LA Waterkeeper is satisfied with the content and conclusions set forth in the Action Plan. Within thirty (30) calendar days of the Union CM's receipt of LA Waterkeeper's comments on the Action Plan, Union CM shall consider LA Waterkeeper's comments and shall

CONSENT DECREE

either incorporate them into the Action Plan or, if the Union CM declines to accept one or more of LA Waterkeeper's comments, Union CM shall meet and confer with LA Waterkeeper to discuss the reasons for not incorporating any of LA Waterkeeper's suggestions.

viii.   Disputes regarding the adequacy of a particular BMP in an Action Plan shall not impact the otherwise applicable schedule for implementing any other provision set forth in the Action Plan. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section J below.

ix.   All communications described in Paragraph 28 herein shall be deemed confidential. Union CM shall not be required to upload the Action Plan to SMARTS. LA Waterkeeper shall not use the Action Plan, or any other document described in Paragraph 28 herein for any purpose other than as a confidential and informational communication, or as necessary as evidence in any dispute resolution proceeding.

F. **VISUAL OBSERVATIONS**

29.   <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained staff of Union CM shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit and as further described in the SWPPP attached hereto as Exhibit A. The Parties acknowledge the SWPPP may be modified as necessary to comply with the General Permit and this Consent Decree.

30.   <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Union CM shall conduct monthly visual observations of the Facility including outfalls, Discharge Point(s), outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. Such inspections shall comply with all requirements of Section

18

CONSENT DECREE

XI.A.1 of the General Permit as more fully described in the SWPPP attached hereto as Exhibit A.  All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility and as further described in Exhibit A.

31.    <u>Visual Observations Records</u>. Union CM shall maintain observation records, including photographs, to document compliance with Paragraph 30. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in a proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) representative photographs of all the foregoing.  Union CM shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.  All communications described in Paragraph 31 herein shall be deemed confidential. Union CM shall not be required to upload the Visual Observation Records to SMARTS. LA Waterkeeper shall not use the Action Plan, or any other document described in Paragraph 31 herein for any purpose other than as a confidential and informational communication, or as necessary as evidence in any dispute resolution proceeding

CONSENT DECREE

G. **TRAINING AND PLANS**

32.     <u>Employee Training Program</u>. By October 1, 2025, Union CM shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("hereinafter referenced as "Pollution Prevention Team" or "PPT"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit Section X.H.1.f. ("Training Program"). At a minimum, the Training Program shall include the following:

a.     <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedures, including drawings and diagrams where appropriate, for reference and use by Union CMs' personnel to ensure effective implementation of all BMPs at the Facility;

b.   <u>Non-Storm Water Discharges.</u> PPT members shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that PPT members know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

c.   <u>The SWPPP and BMPs.</u> Union CM shall train all PPT members on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water and prevent the discharge of contaminated storm water from the Facility. PPT members shall be trained in proper operational procedures and control measures. All training of PPT members

CONSENT DECREE

must include the requirements of the Storm Water Permit and this Consent Decree.

d. Visual Observation. Union CM shall provide training on how and when to properly conduct visual observations to designated PPT members.

e. Storm Water Sampling. Union CM shall designate an adequate number of PPT Members necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit. The Training Program shall include training of PPT Members sufficient to ensure: (i) proper sampling protocols, including chain of custody requirements, are followed at all times and (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

f. Language. The Training Program shall be conducted, and all training materials shall be made available, in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to: (i) staff comprehension of the Training Program and/or, (ii) compliance with this Consent Decree and the Storm Water Permit, Shady Maples shall provide translation services at all training sessions and of all training materials.

g. Training Frequency – Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit. The Training Program shall be repeated annually in October to ensure that all PPT members are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP, or more frequently as necessary. All PPT members shall

receive this training prior to assuming responsibilities under the SWPPP or this Consent Decree.

h. Records. Union CMs shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

33. SWPPP Revisions.

a. Union CM and Plaintiff have met and conferred about Union CM's SWPPP attached hereto as Exhibit A, to which Plaintiff does not object.

b. Additional SWPPP Revisions.

i. Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Union CM shall revise the then-current SWPPP to reflect the changes required by the Action Plan and concurrently notify LA Waterkeeper when the revised SWPPP has been uploaded and certified on SMARTS.

ii. Within thirty (30) days after any changes in industrial activities or sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Union CM shall revise the then-current SWPPP to reflect such changes and concurrently notify LA Waterkeeper that the revised SWPPP has been uploaded and certified on SMARTS.

c. Review of SWPPP. For any SWPPP updates pursuant to Paragraph b, LA Waterkeeper shall have thirty (30) days upon

CONSENT DECREE

receipt of Union CM's complete SWPPP to provide Union CM with comments. Failure to provide written comments prepared by LA Waterkeeper within thirty (30) calendar days shall constitute strong evidence that LA Waterkeeper has no objections to the SWPPP revisions. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Union CM shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Union CM shall upload the revised SWPPP to SMARTS.

    d.    All communications described in Paragraph 33 herein shall be deemed confidential. LA Waterkeeper shall not use the communications described in Paragraph 33 herein for any purpose other than as a confidential and informational communication, or as necessary as evidence in any dispute resolution proceeding

## H. COMPLIANCE MONITORING AND REPORTING

34.    LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. Plaintiff shall not unreasonably request, and Union CM shall not unreasonably deny, one additional Site Inspection. Any disputes over such a request shall be subject to the Dispute Resolution provisions set forth herein Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Union CM with at

CONSENT DECREE

least five (5) days' notice during dry weather and forty eight hours' notice during wet weather prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 55. During the Wet Weather inspection, Plaintiff may request that Union CM collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Union CM shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Union CM's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

35. <u>Document Provision</u>. During the Term, Union CM shall notify and submit documents to LA Waterkeeper as follows:

a. Union CM shall copy LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 55, on all non-privileged substantive compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality..

b. Within ten (10) calendar days of receipt by Union CM, send to LA Waterkeeper, by electronic mail to the individual(s) designated below at Paragraph 60, any non-privileged substantive compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at

the Facility received by Union CM from the Regional Board, the State Board, and/or any state or local agency, county, municipality.

     c.    All non-public communications described in Paragraph 35 herein shall be deemed confidential. LA Waterkeeper shall not use the communications described in Paragraph 35 herein for any purpose other than as a confidential and informational communication, or as necessary as evidence in any dispute resolution proceeding.

36.    <u>Compliance Monitoring</u>. Union CM shall partially defray costs associated with Plaintiff's monitoring of Union CM's compliance with this Consent Decree during the Term by paying Fifteen Thousand Dollars ($15,000.00) within (30) days of the Effective Date. Payment pursuant to this Paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Senior Attorney, 360 E 2nd Street, Suite 250, Los Angeles, CA 90012. Please include the Facility's name and WDID on the payment. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**I.  ENVIRONMENTALLY BENEFICIAL PROJECT, LITIGATION FEES AND COSTS, MISSED DEADLINES, AND INTEREST**

37.    <u>Environmentally Beneficial Project</u>. To fund environmentally beneficial project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in Compton Creek, Los Angeles River Reaches 1 and 2, the Los Angeles River Estuary (Queensway Bay), San Pedro Bay Near and Off Shore Zones, and the Pacific Ocean, Union CM shall make a payment totaling Twenty Thousand Dollars ($20,000.00) to the Friends of the Los Angeles River. Union CM shall make monthly payments of $2,000 for ten months beginning within sixty (60) days of the Effective Date, payable to Friends of the Los Angeles River and sent via overnight mail to 570 W Avenue 26 #250, Los Angeles, California, 90065. Failure to submit payment as required under this Paragraph will constitute

breach of the Consent Decree.

38.    <u>LA Waterkeeper's Fees and Costs</u>. Union CM shall pay a total of Sixty Thousand Dollars ($60,000.00) to LA Waterkeeper to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. A first installment of $10,000 shall be made within thirty (30) days of the Effective Date. Union CM shall make monthly payments of $1,900 for ten months beginning within sixty (60) days of the Effective Date. Union CM shall make monthly payments of $3,900 for seven months thereafter and one final payment of $3,700 in the 18th month. Payment shall be made payable to: Coast Law Group, LLP c/o Livia B. Beaudin and delivered by overnight carrier to 1140 S. Coast Highway 101, Encinitas, California 92024. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

39.    <u>Missed Deadlines</u>. For any missed deadline not excused by the Force Majeure provisions in this agreement or otherwise agreed to by the Parties, LA Waterkeeper shall promptly notify Union CM in writing of the missed deadline and provide Union CM fifteen (15) calendar days to cure. Union CM shall pay a stipulated payment of Five Hundred Dollars ($500) per day for every day after the end of the cure period for which the deadline has been exceeded. Such stipulated payments shall be made by check payable to: Friends of the Los Angeles River, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 37. Payment shall be sent via overnight mail to Friends of the Los Angeles River, 570 W Avenue 26 #250, Los Angeles, California, 90065. Union CM agree to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

CONSENT DECREE

**J. DISPUTE RESOLUTION**

40. <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the meet and confer.

41. <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days from the date of the meet and confer described in Paragraph 35, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42. In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**K. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

43. <u>Plaintiff's Waiver and Release of Union CM</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Union CM, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.     Union CM's Waiver and Release of Plaintiff. In consideration of the above, upon the Effective Date of this Consent Decree, Union CM, on their own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to and including the Termination Date of this Consent Decree.

45.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Union CM' compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

**L. MISCELLANEOUS PROVISIONS**

46.     No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Union CM maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

47.     Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

48.     Authority. The undersigned representatives for Plaintiff and Union CM each certify that s/he is fully authorized by the Party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

CONSENT DECREE

49.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

50.    Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

51.    Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

52.    Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

53.    Choice of Law. The laws of the United States shall govern this Consent Decree.

54.    Diligence. Union CM shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

55.    Effect of Consent Decree. Compliance with this Consent Decree does not mean that Union CM is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

56.    Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the Party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one Party.

57.    Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

58.    Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Union CM shall notify Plaintiff within ten (10) days of any assignment.

59.    Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any Party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

CONSENT DECREE

60.    Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

| If to Plaintiff: | If to Union CM: |
|---|---|
| Los Angeles Waterkeeper | Jong Byun |
| Benjamin Harris | Union CM Inc. |
| Erina Kwon | 2203 S. Alameda Street |
| Madeleine Siegel | Los Angeles, CA 90058 |
| 360 E 2nd St., Suite 250 | Email: jongukbyun@gmail.com |
| Los Angeles, CA 90012 | Phone: (323) 587-6001 |
| Email: ben@lawaterkeeper.org | |
| Email: erina@lawaterkeeper.org | |
| Email: madeleine@lawaterkeeper.org | |
| Phone: (310) 394-6162 | |
| | |
| With copies to: | With copies to: |
| Livia Borak Beaudin | S. Wayne Rosenbaum |
| Coast Law Group LLP | Environmental Law Group LLP |
| 1140 South Coast Highway 101 | Varco & Rosenbaum |
| Encinitas, CA 92024 | 225 Broadway, Suite 1900 |
| Email: livia@coastlaw.com | San Diego, CA 92101 |
| Phone: (760) 942-8505 | Email: swr@envirolawyer.com |
| | Email: golsson@envirolawyer.com |
| | Phone: (619) 231-5858 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

61.    If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the Court should

31

CONSENT DECREE

decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Union CM.

Dated: February 17, 2026                    CENTRAL DISTRICT OF CALIFORNIA

_____
HON. PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE

32
CONSENT DECREE